# BORRELLI & ASSOCIATES

## P.L.L.C.

www.employmentlawyernewyork.com

| 655 Third Avenue | 1010 Northern Boulevard |
|---|---|
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

March 19, 2018

_Via Electronic Case Filing_
The Honorable Katherine H. Parker
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   _Dey et al. v. Saifi et al._ Docket No.: 1:17-cv-02049 (KHP)

Dear Judge Parker:

As the Court knows, this office represents the two named-Plaintiffs, Zenith Dey and Libby Abesamis, along with the two opt-in Plaintiffs, Expedito Libago and Frederick Sescon, (all four, together where appropriate, as "Plaintiffs"), in the above-referenced matter in which they bring claims against Next Cleaners, LLC, Next Cleaners NY1, LLC, Next at 808 Columbus, Inc., (collectively as "the Next Cleaners" defendants), Kam Saifi, George Inakavadze, and Aleksey Berezov, (hereinafter as "the Individual Defendants"), (together, with the Next Cleaners defendants, where appropriate, as "Defendants") (and Defendants, together with the Plaintiffs, as "the Parties"), for Defendants' alleged violations of, _inter alia_, the overtime and minimum wage provisions of the Fair Labor Standards Act ("FLSA"). On November 28, 2017 and January 30, 2018, the Parties attended in-person settlement conferences before Your Honor. While the parties did not ultimately agree to resolve this action at those conferences, shortly after the second one - - and in large part thanks to this Court's assistance - - the Parties reached a settlement in principle, which they have now reduced to a formal written agreement. The Parties' Settlement Agreement ("Agreement") is attached hereto as **Exhibit A**.[1] We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs'

---

[1] The attached Agreement is fully executed by the Plaintiffs. Defendants have all agreed to the terms and will submit a fully-executed copy to this Court within forty-eight hours.

FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[2]

## I.    Procedural History and Settlement Agreement Terms

On March 21, 2017, Plaintiffs Dey and Abesamis, on behalf of themselves and all others-similarly-situated, filed their Summons and Complaint - - and consent-to-join forms - - to commence this action and simultaneously opt-in to the FLSA § 216(b) collective in this matter. ECF #s 1, 5, 6.  Plaintiffs alleged that they worked for Defendants - - a dry cleaner distribution company, one of its brick-and-mortar dry-cleaning stores, and three of the Defendants' owners - - in Manhattan as store clerks and bicycle delivery drivers.  Plaintiffs alleged that despite working over forty hours per week, Defendants failed to pay them overtime at the rate of one and one-half their regular rates of pay, and during a brief period, sufficient wages to comply with the statutory minimum wage rate.  Defendants answered on June 21, 2017, denying in sum and substance all of Plaintiffs' material allegations. ECF # 26.

This Court convened an initial telephonic status conference to gauge the prospect of early resolution on August 16, 2017.  Following the August 16th conference, the parties agreed to stipulate to conditionally certify the FLSA § 216(b) collective for the Next Cleaners brick-and-mortar store located at 808 Columbus Circle in Manhattan, at which both Plaintiffs worked, and Judge Furman so-ordered the Parties' stipulation to do so on September 1, 2017. ECF # 30. Thereafter, Plaintiffs' counsel disseminated notice to seven individuals, leading to opt-in Plaintiffs Libago and Sescon joining this action on November 2 and November 14, 2017, respectively. *See* ECF #s 33 (Libago), 34 (Sescon).

In advance of the first in-person settlement conference to be presided over by this Court on November 28, 2017, the parties exchanged documents and information, including damages calculations, and they also submitted detailed *ex parte* statements for the Court's review and use prior to both in-person conferences.  While the parties' initial settlement conference was productive, the Court scheduled a second conference for January 30, 2018, to allow the parties to gather and exchange additional information regarding the Defendants' financial condition and Defendants' alleged defenses to Plaintiffs' alleged hours worked and rates of pay.  During the second settlement conference on January 30th, Defendants provided to Plaintiffs voluminous documentary evidence that strongly rebutted the Plaintiffs' estimated damages calculation - - both as to the number of hours worked, and the alleged regular rates of pay provided to each of the Plaintiffs - - which our office had computed based primarily on Plaintiffs' recollections.

---

[2] Plaintiffs also bring claims for Defendants' alleged violations of the New York Labor Law ("NYLL"), which although resolved in their Agreement, do not require court approval for dismissal.

Finally, with this Court's assistance following the January 30th settlement conference - - and after this Court held a phone conference to discuss settlement and offer guidance on February 9, 2018 - - the Parties reached a resolution of Plaintiffs' claims on February 14, 2018, for a total sum of $108,500.00 (hereinafter the "Settlement Sum"). This amount will be distributed as follows:

- <u>Zenith Dey</u>. The net amount of $12,677.23 (after deduction of attorneys' fees and Dey's pro-rata share of the litigation expenses);

- <u>Libby Abesamis.</u> The net amount of $16,346.79 (after deduction of attorneys' fees and Abesamis's pro-rata share of the litigation expenses);

- <u>Expedito Libago.</u> The net amount of $18,212.80 (after deduction of attorneys' fees and Libago's pro-rata share of the litigation expenses);

- <u>Frederick Sescon.</u> The net amount of $24,555.33 (after deduction of attorneys' fees and Sescon's pro-rata share of the litigation expenses);

    *and*

- <u>Borrelli & Associates, P.L.LC.</u> $36,707.85 for their attorneys' fees and costs, comprising $811.79 as out-of-pocket litigation expenses and $35,896.06, or $1/3^{rd}$ of the net Settlement Sum (i.e., after reduction of litigation expenses before calculating the $1/3^{rd}$ sum) as attorneys' fees

As described in some detail below, each of the Defendants are responsible for paying different portions of the Settlement.

Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances for the reasons detailed below and for those reasons argued and discussed at the Parties' settlement conferences before Your Honor.[3]

## II.    <u>The Agreement is Fair and Reasonable</u>

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed

---

[3] On February 15, 2018, all Parties consented to Your Honor's jurisdiction for all purposes, including to enforce the terms and conditions of the Parties' Settlement Agreement in the event of any Parties' breach. ECF # 43.

settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted).  In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).  The *Wolinsky* factors consider: (a) the plaintiffs' range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion.  The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on the *Wolinsky* factors.

### A.    *Range of Possible Recovery*

Here, as this Court knows, Plaintiffs allege that they worked for the Defendants as store clerks and bicycle delivery drivers.  Specifically, Plaintiffs contend that they worked directly for the Next Cleaners defendants under a "single enterprise" theory, and that all Defendants would be jointly and severally liable for Plaintiffs' alleged damages.  Plaintiffs Dey and Abesamis had the same dates of employment, as they worked with Defendants from July 27, 2014 through March 16, 2017.  Plaintiff Libago preceded Dey and Abesamis at the Next Cleaners 808 Columbus store, working with Defendants from on or around March 23, 2011 through June 14, 2014.  Plaintiff Sescon worked for Defendants at 944 1st Avenue in Manhattan from March 21, 2013 until November 21, 2017.[4]

Throughout their relationship with Defendants, the Plaintiffs alleged that they worked the following number of hours per week during the following time periods for the following rates of pay per week:

| Name | Start | End | Weeks | Hours | Weekly Pay |
|------|-------|-----|-------|-------|------------|
| Dey, Zenith | 7/27/2014 | 12/30/2014 | 22 | 30 | $240.00 |
| Dey, Zenith | 12/31/2014 | 1/25/2015 | 3 | 30 | $240.00 |
| Dey, Zenith | 12/31/2014 | 12/31/2015 | 52 | 61 | $488.00 |
| Dey, Zenith | 1/1/2016 | 7/15/2016 | 28 | 61 | $488.00 |
| Dey, Zenith | 7/15/2016 | 12/31/2016 | 24 | 61 | $550.00 |
| Dey, Zenith | 1/1/2017 | 3/16/2017 | 10 | 61 | $550.00 |
| Abesamis, Libby | 7/27/2014 | 1/25/2015 | 26 | 72 | $475.00 |
| Abesamis, Libby | 1/26/2015 | 12/31/2015 | 48 | 69 | $600.00 |
| Abesamis, Libby | 1/1/2016 | 7/15/2016 | 28 | 69 | $600.00 |
| Abesamis, Libby | 7/15/2016 | 12/31/2016 | 24 | 69 | $650.00 |

---

[4] Plaintiff Sescon joined this action after learning about its pendency from the other Plaintiffs.

4

| Abesamis, Libby | 1/1/2017 | 3/16/2017 | 10 | 69 | $650.00 |
|---|---|---|---|---|---|
| Libago, Expedito | 3/23/2011 | 12/31/2013 | 144 | 66 | $450.00 |
| Libago, Expedito | 1/1/2014 | 6/14/2014 | 23 | 66 | $450.00 |
| Sescon, Frederick | 3/21/2013 | 12/31/2013 | 40 | 64 | $545.00 |
| Sescon, Frederick | 1/1/2014 | 12/31/2014 | 52 | 64 | $600.00 |
| Sescon, Frederick | 1/1/2015 | 12/31/2015 | 52 | 64 | $600.00 |
| Sescon, Frederick | 1/1/2016 | 12/31/2016 | 52 | 64 | $600.00 |
| Sescon, Frederick | 1/1/2017 | 11/21/2017 | 46 | 64 | $600.00 |

Despite working these hours each week, Plaintiffs claimed that, among other things, Defendants failed to pay them overtime compensation for hours worked in excess of forty each week.

As Your Honor observed at the settlement conferences, Defendants strenuously opposed the scope and breadth of the Plaintiffs' claims in this matter. Defendants argued first that they were not a "single enterprise," but that instead the Next Cleaners "trademark" was licensed to various independently owned and operated stores. As a result, liability, if any, would be limited to those specific stores / store owners - - not amongst all Defendants jointly and severally. Second, Defendants argued that Plaintiffs Abesamis and Libago were properly classified as exempt managers - - arguing that Plaintiffs Abesaims and Libago had the freedom to, among other things: set the schedules for employees at the 808 Columbus store; organize and assign work; and were responsible for paying themselves and the other 808 Columbus employees. Third, and perhaps most importantly, Defendants claimed that they paid Plaintiffs on an hourly basis - - presenting evidence that refuted Plaintiffs' damages calculations and instead resulted in a sharp downward adjustment based on what Defendants' contended was Plaintiffs' agreed-upon rates of pay. If true, Defendants' contention may ultimately reduce the Plaintiffs' damages substantially, as this would effectively limit Plaintiffs' damages to as little as one-fourth of their claimed damages (adjusting, essentially, from a time and one-half theory of damages to a half-rate theory of damages and reducing the regular rate in the process), resulting in lower overtime rates of pay for all hours over forty for all Plaintiffs.

Fourth, Defendants disputed the number of hours that Plaintiffs claimed to have worked. According to Defendants, Defendants' gross business receipts reflected an average of no more than five to ten hours of overtime per week, which sharply contrasted with Plaintiffs' remembered overtime hours of between twenty-one and thirty-two hours per week. From Defendants' perspective, any such time spent beyond forty hours would be minimal and intermittent, as Defendants' business volume varied on a seasonal basis, and was limited to deliveries in close proximity to - - and in some instances, within the same building as - - the brick-and-mortar store. And Defendants contend that, in light of their alleged "licensing" agreement between central Next Cleaners operations and the various individual stores, even if

Plaintiffs were able to prevail on any of their claims, the Next Cleaners Defendants' good faith efforts to comply with the law would foreclose the vast majority of Plaintiffs' alleged entitlement to liquidated damages, and would certainly prohibit a finding of willfulness, thereby cutting one-year off of the applicable FLSA statute of limitations, in turn impacting the number of weeks for which all Plaintiffs would be able to recover under that statute.

Were the trier of fact to credit all of Plaintiffs' allegations, Plaintiffs' maximum recovery for their FLSA *and* NYLL overtime claims would be as follows, plus up to 100% of these amounts as liquidated damages:

- Dey:        $56,747.51
- Abesamis: $89,228.30
- Libago:     $93,188.57
- Sescon:    $137,941.08

Accounting for only Plaintiffs' FLSA claims, and using a three-year statute of limitations period (assuming Plaintiffs could prevail on their willfulness claims), these amounts would be as follows:

- Dey:        $51,309.79
- Abesamis: $89,228.30
- Libago:    $8,871.43
- Sescon;    $110,777.14

Of course, if Defendants' successfully proved that Plaintiffs Abesamis and Libago were indeed exempt managers, those Plaintiffs would be entitled to nothing under the FLSA.  And if Defendants successfully combatted Plaintiffs' claims as to the number of hours that they worked, and their rates of pay, Plaintiffs' overtime damages could have amounted to a combined total of as little as $43,017.61 for the full six-year statute of limitations allowed under the NYLL, and as little as $23,050.98 for the FLSA's two-year statute of limitations (if Plaintiffs were unable to prove willfulness).  These figures also assume that Plaintiffs worked five hours of overtime *each and every* week, and do not account for any missed days of work or slow business that, in Defendants' view, further reduced the amount of hours Plaintiffs would have worked per week. Thus, a slightly inflated range of recovery for Plaintiffs' FLSA overtime damages in this matter was between $23,050.98 and $260,000.00 - - if Plaintiffs were to prove all of their overtime claims and hours worked, demonstrate willfulness, and obtain awards of 100% liquidated damages - - or $0.00 and $17,000.00 if Plaintiffs Dey and Sescon proved all of their overtime claims and hours worked, yet Defendants proved that Plaintiffs Abesamis and Libago were exempt managers, and that Defendants acted in a good faith effort to comply with the FLSA, which would necessarily preclude a willfulness finding.

Based on their *pro-rata* distribution under the Parties' Agreement, after deduction of attorneys' fees and costs, Plaintiffs are receiving a combined total of $71,792.15, representing approximately 310% of their maximum actual FLSA damages under Defendants' theory of damages and hours (with Plaintiffs Abesmais and Libago found to be non-exempt), or approximately 27% of their alleged FLSA overtime damages without accounting for liquidated damages under Plaintiffs' absolute best-case scenario of the facts of this case. On balance, considering the evidence that Defendants presented at the Parties' second settlement conference - - presenting substantial challenges for Plaintiffs to prevail on their version of the facts of this case - - the outcome here is highly reasonable.[5]

### B.      *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses were prepared to substantially increase, as additional paper discovery was forthcoming, and all Parties' depositions were soon to commence. Dispositive motion practice on the issues of Plaintiffs Abesamis's and Libago's exemption status, as well as on Defendants' status as a "single enterprise" were sure to follow, with the possibility of a trial on the merits of most of the claims in this case, given the Parties' hotly disputed issues of material fact.

At bottom, even if successful at both the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum, given the substantial relief for Plaintiffs' overtime claims received here and Defendants' well-documented claim that they were not in a position to be able to financially withstand a greater judgment (or settlement) than that obtained here. As this Court is aware, Defendants presented voluminous financial records reflecting their cash flow, lack of profit, and high debt incurred to operate their business. While Plaintiffs contend that they are owed more than the Settlement Sum, Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive any money in light of Defendants' financial condition. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for plaintiffs." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation expenses only expected to rise for all Parties, and with the likelihood of actually collecting higher damages almost assuredly zero, the Settlement Sum is especially fair and reasonable.

---

[5] The proportion of each Plaintiff's respective recovery is based on their individual total damages, with each Plaintiff receiving a *pro-rata* share of the Settlement Sum based on their maximum potential damages under ***both*** the FLSA ***and*** the NYLL.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No* **Cheeks** *Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the FLSA claims, the settlement negotiations took place over several months and concluded only after substantial paper discovery, and after the Parties participated in two in-person settlement conferences that this Court supervised. There was thus no fraud or collusion here.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in the Settlement Agreement is limited to any wage and hour claims that Plaintiffs have or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). Likewise, the agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

With respect to the settlement payments, Plaintiffs' settlement award will be paid in fourteen monthly installments by the Defendants, beginning on either May 1, 2018, or thirty days following this Court's approval, whichever is later, and continuing in equal installments for thirteen successive months thereafter. The distribution between Plaintiffs and Plaintiffs' counsel will be on a *pro-rata* basis each month, with Plaintiffs' counsel taking $57.98 per month as costs (i.e., 1/14[th] of their total costs incurred of $811.79), and one-third of the remaining total monthly payment as fees, each month.

As alluded to above, different Defendants will be contributing different amounts towards each months' settlement payment, and should any of these Defendants fail to timely make payment, Plaintiffs' counsel will notify Defendants' counsel of the breach, and afford the Defendant in breach a period of ten business days to cure said breach. If the breaching Defendant fails to timely cure any such breach, 200% of all remaining unpaid settlement amounts apportioned to the breaching Defendant will immediately become due and owing, and

Plaintiffs will petition this Court for an order entering judgment for this amount under Rule 54(b), plus Plaintiffs' counsel's reasonable fees and costs to obtain any such relief. To that end, the agreement provides that this Court will retain jurisdiction to permit prompt enforcement of the agreement and the entry of judgment against a breaching defendant if necessary. The non-breaching Defendants would then continue to make payment in accordance with the terms of the Parties' Agreement as applicable to each. These non-economic terms further bolster the reasonableness of the outcome obtained, as they help to ensure the Plaintiffs will receive the benefit of their bargain while deterring any default during the repayment period.

### D.   *The Requested Attorneys' Fees and Costs are Reasonable.*

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $35,896.06, limited to one-third of the total net settlement amount after deduction for expenses. Plaintiffs' counsel's request that the Court approve fees of one-third of the total net settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Ezpino*, 2017 WL 3037483, at *3 (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("'A one-third contingency fee is a commonly accepted fee in this Circuit.'"); *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards at a rate of one-third of the total settlement. *See Ezpino*, 2017 WL 3037483, at *3 (approving request for fees at a "contingent rate of one-third"); *see also Cregg v. Firstservice Residential N.Y., Inc.*, Docket No. 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle*, 2014 WL 6621081, at *3 ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiffs' counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012)

(collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *Guaman v. AJNA-BAR NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). To date, Plaintiffs' counsel have billed over 100 hours on this matter - - an adversarial litigated case wherein the parties: engaged in substantial settlement-focused discovery; meticulously calculated each Plaintiff's estimated damages on a week-by-week basis; appeared before this Court on several occasions, including two in-person settlement conferences; and had voluminous correspondence between and among the Parties on a multitude of issues - - amounting to $26,537.50 in fees if calculated pursuant to the lodestar (as of the time of filing), an amount representing approximately a 1.35 lodestar multiplier in excess of the $35,907.36 contingency fee that counsel seeks. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $250.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter who handled all of its day-to-day responsibilities and attended all court conferences; $150.00 per hour for non-appearing junior associates who assisted undersigned counsel on this matter; and $125.00 per hour for law clerks and paralegals. Courts routinely approve these rates. *See Copper v. Cavalry Staffing, LLC*, Docket No.: 1:14-cv-3676 (FB) (RLM), D.E. 255 (E.D.N.Y. Feb. 12, 2018); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, Docket No.: 1:14-cv-2636 (GWG), D.E. 128 (S.D.N.Y. Feb. 9, 2018); *Rodriguez ex rel. Simono v. Gemco Realty II, LLC*, Docket No.: 1:15-cv-5385 (AJN), D.E. 38 (S.D.N.Y. Nov. 21, 2017); *Ata v. St. George Treats, Inc.*, Docket No.: 1:16-cv-0563 (LB), D.E. 40 (E.D.N.Y. Sept. 12, 2017); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *4 (PAE) (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75.00 per hour and $90.00 per hour for the Firm's paralegals); *Calderon v. Dynamic Corp. Holdings, Inc.*, No 14-cv-3093 (ARL) (E.D.N.Y. Apr. 8, 2016) (same); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v.*

*FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for Firm's associates, and $75.00 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75.00 per hour for the Firm's paralegals).

Again, the fees requested represent merely a 1.35 lodestar multiplier in this case, which falls well within what courts routinely approve as reasonable. *See, e.g., Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *1-*5 (S.D.N.Y. 2015) (approving 1.68 lodestar multiplier); *Cuthbert v. New Soldier's Rest., Inc.*, 2015 WL 1321676, at *2 (E.D.N.Y. Mar. 24, 2015) (approving 2.5 lodestar multiplier in default judgment fee award); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19-20 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *see also Wolinsky*¸ 900 F. Supp. 2d at 336 (explaining that a court may adjust the fee upward or downward from the lodestar amount based on other considerations); *In re Giant Interactive Grp. Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (quoting *City of Detroit v. Grinnell Corp*, 495 F.2d 448, 470 (2d Cir. 1974) ("The most salient is the attorneys' risk in accepting a case on contingency fee, for the Second Circuit has noted 'no one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'"). Plaintiffs' counsel's contemporaneously-kept billing records are attached hereto as **<u>Exhibit B</u>**.

Finally, with respect to costs, Plaintiffs' counsel has incurred $811.79 in out-of-pocket expenses prosecuting this case, limited to the Court's filing fee, postage and copying, PACER fees, and sending an FLSA notice to potential opt-in Plaintiffs, which led to Plaintiffs Libago and Sescon joining this case. Plaintiffs' counsel's itemized expense report is attached here as **<u>Exhibit C</u>**.

Accordingly, Plaintiffs' counsel's request for a total of $36,707.85 as compensation for their work and expenses in this matter is entirely reasonable.

**III.**    **Conclusion**

      For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve the settlement of Plaintiffs' FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement.  The Parties have attached a proposed order of dismissal as an exhibit to the Parties' Agreement for the Court to review and Enter.

                       Respectfully submitted,

                       Michael R. Minkoff, Esq.
                          *For the Firm*

To: All Counsel via ECF

Enclosure