UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ZENITH DEY, *et al.*,

                              Plaintiffs,

              -against-

KAM SAIFI, *et al*,

                            Defendants.

---------------------------------------------------------------X

**ORDER**

**1:17-CV-02049 (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      This matter is before me on the parties' joint application to approve the parties'

settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015),

*cert. denied*, 136 S. Ct. 824 (2016), to the extent it waives claims under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

**I.     Facts**

      Defendants own and operate dry cleaners and laundromats throughout New York City

and New Jersey. Plaintiffs Zenith Dey and Libby Abesamis, along with two opt-in Plaintiffs

Expedito Libago and Frederick Sescon ("Plaintiffs"), worked for Defendants in New York City as

store clerks and bicycle delivery drivers. The Complaint in this case alleged that: (1) Defendants

failed to compensate Plaintiffs in accordance with the FLSA's overtime provisions; (2)

Defendants did not compensate Plaintiffs at the minimum hourly rate required by the FLSA for

all hours worked; (3) Defendants failed to compensate Plaintiffs in accordance with the New

York Labor Law ("NYLL") and the New York Codes, Rules and Regulations' ("NYCRR")  provisions;

(4) Defendants did not compensate Plaintiffs at the minimum hourly rate required by the NYLL and NYCCRR for all hours worked; (5) Defendants failed to provide Plaintiffs with spread of hours pay on each day when their spread of hours exceeded ten; (6) Defendants, on each payday, failed to furnish Plaintiffs with accurate wage statements containing the criteria required under the NYLL; and (7) Defendants failed to furnish Plaintiffs with accurate wage notices at hire containing all of the criteria required under the NYLL. The Complaint sought recovery of: (1) minimum wage/overtime compensation for unpaid hours worked; (2) liquidated damages and any statutory penalties recoverable under the FLSA and NYLL; and (3) costs and disbursements, including reasonable attorneys' fees and pre- and post-judgment interest. Defendants dispute Plaintiffs' allegations and dispute that Plaintiffs worked the number of hours claimed.

Were the trier of fact to credit all of Plaintiffs' allegations, Plaintiffs' maximum recovery for their FLSA and NYLL overtime claims would be as follows, plus up to 100% of these amounts as liquidated damages: Dey: $56,747.51; Abesamis: $89,228.30; Libago: $93,188.57; and Sescon: $137,941.08. Defendants dispute a willful FLSA violation and claim that Plaintiffs Abesamis and Libago were exempt managers under the FLSA, that Plaintiffs were paid on an hourly basis, and that Plaintiffs worked less than what they allege.

In an effort to reach an early resolution of Plaintiffs' claims, the parties engaged in arms-length negotiations before this Court and ultimately reached a settlement.

**II.   Settlement Terms**

Under the terms of the settlement, Defendants will pay a total settlement of $108,500.00. This amount will be distributed as follows:

2

• Zenith Dey - The net amount of $12,677.23 (after deduction of attorneys' fees and Dey's pro-rata share of the litigation expenses);

• Libby Abesamis - The net amount of $16,346.79 (after deduction of attorneys' fees and Abesamis's pro-rata share of the litigation expenses);

• Expedito Libago - The net amount of $18,212.80 (after deduction of attorneys' fees and Libago's pro-rata share of the litigation expenses);

• Frederick Sescon - The net amount of $24,555.33 (after deduction of attorneys' fees and Sescon's pro-rata share of the litigation expenses); and

• Borrelli & Associates, P.L.LC. - $36,707.85 for their attorneys' fees and costs, comprising $811.79 as out-of-pocket litigation expenses and $35,896.06, or 1/3rd of the net Settlement Sum (*i.e.*, after reduction of litigation expenses before calculating the 1/3rd sum) as attorneys' fees.

The settlement agreement provides for a release of all wage claims without Defendants admitting liability. Assuming court approval of the settlement agreement, the parties stipulate to dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) ("Rule 41"). The settlement agreement states that the Court shall retain jurisdiction over this matter solely to enforce the parties' settlement.

## III.   Approval of the FLSA Settlement

The FLSA sets forth the minimum wage and overtime that an employee must be paid, as well as specific exemptions from its requirements. The U.S. Supreme Court recognized that the statute was designed to protect "certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being." *Brooklyn Sav. Bank v.*

*O'Neil*, 324 U.S. 697, 706 (1945). Since then, courts have recognized the unique policy considerations underlying the FLSA and the importance of deterring employers from exerting undue pressure on low wage employees to compromise valid wage claims. Citing these concerns, the Second Circuit has held that settlements of FLSA claims in which the parties terminate the action via a stipulation of dismissal pursuant to Rule 41 require approval of the district court or the U.S. Department of Labor to take effect. *Cheeks*, 796 F.3d at 206.

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citations omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (parties must demonstrate settlement is "fair and reasonable").

There are five factors relevant to an assessment of the fairness of an FLSA settlement including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (other citations omitted)). The settlement here satisfies these criteria.

First, Plaintiffs' maximum recovery is based on factual assumptions that Defendants contest regarding the amount of unpaid hours Plaintiffs worked, the manner in which Plaintiffs were paid, and the proper classification of Plaintiffs under the FLSA. If Defendants succeeded in establishing that Plaintiffs' assumptions are too high and incorrect, Plaintiffs ultimate recovery would be far less than the amount of damages they currently claim. Defendants also contend that they made good faith efforts to comply with the FLSA, thereby foreclosing much of Plaintiffs' alleged entitlement to liquidated damages. In short, Plaintiffs faced substantial legal and factual risks on their claims. Nonetheless, the settlement amounts to more than 310% of Plaintiffs' maximum actual FLSA damages under Defendants' theory of damages and hours (with Plaintiffs Abesmais and Libago found to be non-exempt), or approximately 27% of Plaintiffs' alleged FLSA overtime damages without accounting for liquidated damages under Plaintiffs' best-case scenario of the facts of this case. Thus, the settlement represents a fair compromise given Plaintiff's range of possible recovery.

With respect to the second and third factors, the settlement will entirely avoid the burden, risks, expenses, and aggravation of continued litigation. Given the factual disputes in this case, the parties faced substantial additional litigation costs and risks associated with additional discovery, motion practice, and trial. These costs and risks are fully avoided by settlement.

Fourth, both parties are represented by experienced counsel and it is clear from this Court's oversight of settlement discussions that the settlement is the product of arm's-length bargaining between experienced counsel. Fifth, there are no factors here that suggest the existence of fraud.

The settlement agreement is consistent with terms approved by courts in the Second Circuit and does not contain any terms that would require disapproval. For example, the Plaintiffs' release is not overly broad and the settlement agreement does not contain a non-disparagement clause. Finally, the settlement agreement provides that one-third of the total net settlement amount will be paid to Plaintiffs' counsel as a contingency fee and costs. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *See Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15-cv-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015) (citing *Thornhill v. CVS Pharm., Inc.*, No. 13-cv- 507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014)); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-cv-3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012); *Palacio v. E\*TRADE Fin. Corp.*, No. 10-cv-4030 (LAP) (DCF), 2012 WL 2384419, at *6-7 (S.D.N.Y. June 22, 2012).

In assessing the reasonableness of the proposed attorneys' fee allocation, the Court also considers the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). Lead counsel in the Southern District of New York typically charge between $300 and $400 per hour in wage-and-hour cases, but courts in this district have approved hourly rates as high as $450. *Rodriguez-Hernandez v. K Bread & Co., Inc.,* No. 15-cv-6848 (KBF), 2017 WL 2266874, at *6 (S.D.N.Y. May 23, 2017) (collecting cases). Plaintiff's counsel submitted time records for their work on this matter. Based on those records and assuming an average billable rate of $400 per hour, Plaintiff's counsel's lodestar amount equals $51,720. Therefore,

the requested one-third fee is less than Plaintiff's counsel's lodestar. This amount is objectively reasonable.

**IV.    Conclusion**

For all the reasons set forth above, this Court approves the settlement in this matter. Accordingly, this action is dismissed with prejudice and without costs. The Court shall retain jurisdiction over this matter solely to enforce the parties' settlement.

**SO ORDERED.**

Dated: March 26, 2018
        New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge